<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDWIN LOPEZ, | : |
| | : |
| Plaintiff, | : Civil No. 07-3967 (AET) |
| | : |
| v. | : |
| | : |
| DR. AHMAR SHAKIR, et al., | : **O P I N I O N** |
| | : |
| Defendants. | : |

**APPEARANCES:**

Edwin Lopez, <u>Pro</u> <u>Se</u>
#440220
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

**THOMPSON, District Judge**

Plaintiff, Edwin Lopez, currently incarcerated at the South Woods State Prison, Bridgeton, New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> without prepayment of fees pursuant to 28 U.S.C. § 1915. Based on Plaintiff's affidavit of indigence and account statement, the Court will grant his application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the complaint.

At this time, the Court must review the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such

relief.  For the following reasons, Plaintiff's complaint, as submitted, is subject to dismissal for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  However, the dismissal will be without prejudice to Plaintiff filing a motion to reopen and an amended complaint.

## BACKGROUND

Plaintiff states that on August 22, 2005, he sustained a hand injury.  He was immediately sent to the hospital for emergency care.  About 9 days later, he received surgery for his hand, resulting in three pins inserted into his hand and a soft cast.  Defendant Dr. Shakir performed the surgery, although Dr. Shakir did not perform an MRI of the hand prior to surgery.  Plaintiff remained in the hospital for three days after surgery.

Plaintiff states that his hand became infected when he was returned to the Garden State Youth Correctional Facility after surgery due to unsanitary conditions.  Plaintiff's pins were removed about one month later.

Plaintiff "had several consults" with an orthopedic doctor at New Jersey State Prison, who told him that 30% of cartilage was missing from his joints.

Plaintiff started therapy on October 27, 2005, less than a month after having his pins removed on September 29, 2005.  Plaintiff's therapist prescribed a "hand ball," but Plaintiff

2

never received it.  Plaintiff's therapy was terminated in December of 2005 and Plaintiff returned to Dr. Shakir for "a final synopsis."  Plaintiff did not appreciate defendant Shakir's tone with him or his demeaning, defensive attitude.  The doctor told Plaintiff that he had "reached maximum medical treatment," despite the fact that Plaintiff was disfigured and in substantial pain, and not able to perform activities like he had in the past.

Plaintiff was granted a second opinion by the medical chief of staff at Garden State Youth Correctional Facility.  He was transferred to South Woods State Prison, and in July of 2006 saw a hand specialist at the University of Medicine and Dentistry of New Jersey.  The hand specialist recommended a scraping of Plaintiff's knuckles, and Plaintiff was sent to the hospital for surgery on August 16, 2006.  Plaintiff remained at the hospital for three days after surgery, where he was treated with splints.

Plaintiff was then sent to Northern State Prison's infirmary for recovery for three days, then was sent back to South Woods State Prison.  Upon his return he met with "Bob," a therapist. Although Plaintiff believed he was supposed to receive therapy everyday, he only received therapy three times per week.  Due to a Strep A outbreak at the prison and Bob's absences, Plaintiff's therapy was often cancelled.  Plaintiff was also denied therapy for "a few incidents" when a woman (Jane Doe) who worked at the prison would not let him attend his scheduled appointments.

Plaintiff complains that there was never a substitute therapist for times when Bob cancelled.

Plaintiff was scheduled to have his stitches removed by the hospital two to three weeks after surgery, but was not permitted to go because of a quarantine due to the Strep A outbreak.  The prison offered the nurse's services to remove the stitches. Initially Plaintiff refused, but then allowed a different nurse to remove the stitches.

In November of 2006, Plaintiff's therapy was terminated.  In December of 2006, Plaintiff was given an x-ray which showed arthritis.  He states that from the time therapy was concluded until March of 2007, he saw "various nurses, nurse practitioners and doctors" and sought approval to go back to the hand specialist, and for pain medication.  In February of 2007, he was prescribed pain medication.

Plaintiff was able to see defendant Dr. Hassan and told him of complications and reiterated his request to go back to the hand specialist.  The doctor "responded aggressively," but consented to Plaintiff seeing a prison orthopedic.

In April of 2007, Plaintiff saw a prison psychiatrist, as well as the prison orthopedic.  Plaintiff also saw a nurse practitioner and a physician, Dr. Torres, and was told he would not be approved to see a specialist.

Plaintiff states that he is permanently disfigured and disabled, in constant discomfort, and psychologically impaired, and believes "that only an expert in hand operations should have concluded what is in plaintiff's best interest."

Plaintiff asks for monetary and injunctive relief.

**DISCUSSION**

**A.    Standard of Review**

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous."  Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.

When determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should

5

"accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

Section 1915(e)(2)(B) requires the Court to dismiss, at the earliest practicable time, any in forma pauperis actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  See Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004)(stating that at the pleading stage, a plaintiff need only make out a claim upon which relief can be granted, and that if more facts are necessary to resolve the dispute, the parties may avail themselves of discovery mechanisms); Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson

6

v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002)

(dismissal pursuant to § 1915(e)(2));.

## B.   42 U.S.C. § 1983

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## C.   Plaintiff's Claims Are Subject to Dismissal.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103-

04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  See id. at 106.

To satisfy the objective prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk

of harm.  See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).

Furthermore, a prisoner's subjective dissatisfaction with his

medical care does not in itself indicate deliberate indifference.

See Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J.

2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982),

aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere

disagreements over medical judgment do not state Eighth Amendment

claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

Even if a doctor's judgment concerning the proper course of a

prisoner's treatment ultimately is shown to be mistaken, at most

what would be proved is medical malpractice and not an Eighth

Amendment violation.  See Estelle, 429 U.S. at 105-06; White, 897

F.2d at 110.

     In the instant case, Plaintiff has not demonstrated a

constitutional violation for the denial of medical care.  While

it appears that he has met the objective prong of Estelle, in

alleging facts indicating that his medical needs are "serious,"

and has not alleged facts indicating that defendants were

"deliberately indifferent" to his medical needs.  In his 20-page

complaint, Plaintiff recites numerous visits to doctors,

hospitals, therapists, and specialists, and asserts that he has

been treated with surgery and therapy for his hand injuries.

While Plaintiff may or may not state a claim under state law for

medical malpractice, and whether or not Plaintiff was satisfied

with the care he received, Plaintiff has not alleged facts indicating a violation of the Eighth Amendment of the Constitution for denial of medical care.  Thus, his complaint is subject to dismissal for failure to state a claim upon which relief may be granted.

### CONCLUSION

Based on the foregoing, Plaintiff's complaint will be dismissed, without prejudice.  See Alston, 363 F.3d at 234 n.7 (stating that with a complaint that makes "little sense," District Court could have dismissed complaint without prejudice, to permit Plaintiff to amend the complaint).  The Court notes that "generally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995)(quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)).  In this case, if Plaintiff can correct the deficiencies of his complaint, he may file a motion to reopen these claims in accordance with the attached Order.


s/ Anne E. Thompson
ANNE E. THOMPSON
United States District Judge


Dated: September 28, 2007

10